IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALBERT JOHN MASTROCESARE, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ANDREW M. SAUL, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Civil Action No. 20-347 |

ORDER

AND NOW, this 15th day of June, 2021, having considered the parties' motions for summary judgment and reviewed the Commissioner of Social Security's ("Commissioner") final decision denying Plaintiff's applications for benefits under the Social Security Act ("Act"), the Court will affirm that decision.[1] Substantial evidence supports the Commissioner's decision denying Plaintiff's applications for disability insurance benefits, pursuant to Title II of the Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income, pursuant to Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* See 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).[2]

---

[1] Both Plaintiff and Defendant have asked the Court to tax costs against their opponent. *See* Doc. Nos. 14, 16. However, because neither party has briefed costs, the Court will not address them. *See Pa. Dep't of Public Welfare v. U.S. Dep't of Health & Human Servs.*, 101 F.3d 939, 945 (3d Cir. 1996). Therefore, affirmance of the Commissioner's final decision shall be effected by partial grant of Defendant's summary judgment motion.

[2] In the antecedent administrative proceedings, the Administrative Law Judge ("ALJ") concluded Plaintiff is not disabled though he suffers from six severe, medically determinable impairments—major depressive disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), substance abuse disorder, and left

radial nerve palsy. (R. 14). Plaintiff finds fault in that determination and argues the matter should be remanded for four reasons. First, Plaintiff argues the ALJ failed to find he suffered from a seventh severe, medically determinable impairment. Second, Plaintiff argues the ALJ's residual functional capacity ("RFC") finding is not supported by substantial evidence. Third, Plaintiff argues the ALJ failed to include all appropriate limitations in the hypothetical questions he posed to the vocational expert ("VE"), tainting the VE's testimony that jobs were available to Plaintiff notwithstanding his limitations. Fourth, Plaintiff argues the ALJ did not afford Plaintiff's own representation of his symptoms appropriate weight. The Court finds no such faults nor insufficiency of the evidence and will therefore grant Defendant's summary judgment motion. Because Plaintiff's second argument concerning the ALJ's RFC determination and his fourth argument concerning the weight the ALJ afforded his statements about his symptoms are substantially intertwined, the Court will address them together.

      Plaintiff's first argument—that the ALJ missed a seventh severe, medically determinable impairment at the time he identified six other such impairments—would not require remand even if the Court were to assume the seventh alleged impairment should have been deemed severe and medically determinable. ALJs employ a five-step evaluation process to assess disability benefit applications. *Plummer*, 186 F.3d at 428—29. At the second step, claimants must prove they suffer from at least one severe, medically determinable impairment or combination of impairments, otherwise the inquiry immediately ends with a finding that they are "ineligible for disability benefits." 20 C.F.R. § 404.1520(c). Because claimants who prove they suffer from even one qualifying impairment at step two continue to step three, an ALJ's failure to label any secondary impairment "severe" is not an error that requires remand. *Gerald v. Berryhill*, No. 3:17-CV-00575, 2018 WL 7364649, at *5 (M.D. Pa. Oct. 12, 2018), *report and recommendation adopted*, No. CV 3:17-575, 2019 WL 719829 (M.D. Pa. Feb. 19, 2019); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007). Further, all "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" are considered when the ALJ determines a claimant's RFC. SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). Here, the ALJ identified six severe, medically determinable impairments, but declined to include Plaintiff's right radial nerve palsy as a seventh because he found the record did not indicate that condition had "lasted for a continuous 12-month period." (R. 14—15). He later considered evidence of Plaintiff's right radial nerve palsy in his determination of Plaintiff's RFC. (R. 15, 23). Thus, Plaintiff's first argument for remand fails.

      Plaintiff's second argument for remand is that the ALJ's RFC findings are not supported by substantial evidence. Specifically, Plaintiff argues substantial evidence is lacking to support the ALJ's failure to limit Plaintiff's use of his right hand and the ALJ's imposition of, in the Plaintiff's view, inappropriately modest limitations on Plaintiff's use of his left hand and his capacity for interaction with others. (Doc. No. 15, pgs. 10—11). Relatedly, Plaintiff's fourth argument is that the ALJ afforded Plaintiff's representation of his symptoms inadequate weight when the ALJ considered the severity of Plaintiff's symptoms and the functional limitations that might arise therefrom. (Doc. No. 15, pgs. 12—14) (arguing the ALJ lacked a rational basis for

discounting his testimony and failed to make specific findings supporting the weight assigned Plaintiff's testimony).

The Court reviews the Commissioner's findings to ensure they are supported by substantial evidence. *Plummer*, 186 F.3d at 427. When ALJs determine the most a claimant can do "despite [his] recognized limitations," *i.e.*, his residual functional capacity, *Davis v. Astrue*, 830 F. Supp. 2d 31, 35 n.5 (W.D. Pa. 2011), underlying fact findings must be adequately explained and supported by substantial evidence. *Pecoraro v. Berryhill*, No. CV 17-912, 2018 WL 4334620, at *1 n.1 (W.D. Pa. Sept. 11, 2018) (citing SSR 96-8p). Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Strogish v. Astrue*, No. 08CV757, 2008 WL 5263350, at *3 (W.D. Pa. Dec. 16, 2008) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Biestek*, 139 S. Ct. at 1154. "[R]eviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder." *Strogish*, 2008 WL 5263350, at *4. Nor may reviewing courts interject their own consideration of evidence the ALJ overlooked to fill a gap. *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

To determine which limitations are appropriate for inclusion in the RFC, ALJs consider all the evidence, including claimants' "statements about [their] symptoms," 20 C.F.R. § 416.929(a), though those statements alone are not "sufficient to establish disability." *Baum v. Colvin*, No. CV 15-277-E, 2017 WL 1090790, at *1 n.1 (W.D. Pa. Mar. 22, 2017) (citing 20 C.F.R. § 404.1529(a)). There must be evidence of "a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(b). Then, if such an impairment or impairments are present, the ALJ considers "all of the available evidence" pertaining to the claimant's symptoms, including the Plaintiff's statements, objective medical evidence, and medical opinions to understand the symptoms' severity and how they limit the claimant. *Id.* § 416.929(a); SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017) (explaining that ALJs consider statements from medical sources, a claimant's effort to work, daily activities, treatment history, etc., to determine the limiting effect(s) of symptoms). To that end, the claimant's subjective complaints are valued, but the ALJ may reject them as long as the ALJ "affirmatively addresses the issue in his decision, specifies his reasons for rejecting them, and . . . his conclusion is supported by the record." *Duncan v. Sullivan*, 786 F. Supp. 466, 470 (E.D. Pa. 1992). The ALJ's consideration of subjective complaints has often been referred to as an examination of a claimant's credibility, however, the Social Security Administration has clarified that subjective symptom evaluation is not a character appraisal. *See* SSR 16-3p.

In this matter, the ALJ found Plaintiff's RFC included the capacity "to perform light work . . . except [he] can frequently handle, finger and feel with his dominant left hand. He is also limited to simple tasks and can tolerate few, if any, workplace changes, and can tolerate no more than occasional interaction with the public, coworkers and supervisors." (R. 16). By prescribing "light work," the ALJ limited Plaintiff to lifting "no more than 20 pounds at a time" with "frequent lifting or carrying" of just ten pounds or less. 20 C.F.R. § 404.1567(b). Light work also "requires a good deal of walking or standing," or sitting that involves "some pushing

and pulling of arm or leg controls." *Id.* Performing a task frequently means being engaged in that task up to two-thirds of the day, whereas tasks performed occasionally "occur[] very little up to one third of the day." *Knight v. Colvin*, No. CV 16-1816, 2018 WL 1400077, at *1 n.1 (W.D. Pa. Mar. 20, 2018) (citing SSR 83-10, 1983 WL 31251 (S.S.A. Jan. 1, 1983)).  Plaintiff argues this RFC determination is unsupported by substantial evidence, particularly in its omission of a limitation for right-hand use and the "frequently" and "occasional" limitations pertaining to his left hand and ability to interact with people.  Plaintiff points out that further limitation would have led the VE to determine no jobs were available to him.  (Doc. No. 15, pg. 11 (citing R. 76, 79)).  In Plaintiff's estimation, the record supports more substantial limitations than are reflected in the RFC.  Plaintiff points to his testimony that his hand and wrist symptoms prevented him from, among other things, tying his shoes and required his employment of a homemade assistive device to eat.  (Doc. No. 15, pg. 11).  He also argues that his history of angry exchanges with supervisors and medical providers show he is incapable of "get[ting] along with" others and cannot be expected to maintain employment that requires interacting with others for one-third of the day.  (Doc. No. 15, pg. 11).

Contrary to Plaintiff's argument that the ALJ's findings lack the support of substantial evidence and neglect the full extent of his testimony, the ALJ's consideration of the evidence, including Plaintiff's testimony, is thorough and well-reasoned.  The ALJ considered Plaintiff's testimony and medical records pertaining to "radial nerve palsy in both hands, which [Plaintiff testified] [left] him unable to lift his wrists up or down due to nerve damage."  (R. 17).  He also considered Plaintiff's testimony concerning his alleged difficulty with "memory" as well as "lift[ing], reach[ing], complet[ing] tasks, concentrat[ing], understand[ing] and follow[ing] instructions."  (R. 17).  The ALJ found that Plaintiff's alleged symptoms could be caused by his medically determinable impairments, but further found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  (R. 17).  Considering the objective medical evidence, the ALJ found the "conservative and sporadic treatment" Plaintiff received for his upper extremity impairments undermined his account of his symptoms.  (R. 25).  The ALJ cited Plaintiff's treatment with Dr. Pfaeffle, an orthopedic surgeon, in January 2016.  (R. 22).  At that time, Dr. Pfaeffle examined Plaintiff's upper extremities and, concerning the left, reported "0/5 motor strength" in Plaintiff's "extensor pollicis longus and the extensor tendons to all fingers," but further found that he "maintained a full range of motion in all fingers of his left hand and a 5/5 grip strength."  (R. 22 (citing Ex. 2F at R. 314)).  The right upper extremity "demonstrated full range of motion of all fingers" and "5 out of 5" grip strength.  (R. 314).  Dr. Pfaeffle prescribed conservative treatment and indicated an optimistic prognosis.  (R. 22 (citing Ex. 2F at R. 315)).

The ALJ further considered Plaintiff's subsequent care.  One month after Dr. Pfaeffle's examination, Plaintiff saw his primary care physician ("PCP") and reported "right wrist drop, which was the same as the left side."  (R. 23 (citing Ex. 3F at R. 326)).  His PCP ordered an EMG nerve conduction study but also addressed Plaintiff's use of "multiple pharmacies to obtain . . . medication from multiple providers" and informed Plaintiff that she would not be able to

refill his Neurontin prescription. (R. 23 (citing Ex. 3F at R. 329)). The results of Plaintiff's EMG nerve conduction test "showed severe radial neuropathy in both extremities localized to the level of the elbow, which was likely compressive in nature," with a "favorable prognosis." (R. 23 (citing Ex. 10F at R. 593)). Not long after Plaintiff underwent that testing, he "established care with a new [PCP]" and reported "bilateral hand and wrist pain," but was observed to be "in no acute distress" with a "normal range of motion and strength in his bilateral upper extremities." (R. 23 (citing Ex. 4F at R. 335)). When he saw a second orthopedic surgeon—Dr. Pacek—approximately two years later, Dr. Pacek diagnosed Plaintiff with "left radial nerve palsy and questionable median and ulnar neuropathy," but refused to impose work restrictions on Plaintiff. (R. 24 (citing Ex. 10F at R. 590—91)).

As he did for Plaintiff's physical health records, the ALJ thoroughly reviewed Plaintiff's mental health records. That review led the ALJ to determine that Plaintiff's mental health symptoms were tolerable when Plaintiff and his providers worked to maintain an appropriate medication regimen. (R. 25). The ALJ pointed out that despite Plaintiff's representation of how severely his mental health would limit his ability to function in a workplace, Plaintiff's mental status examinations were generally "unremarkable" and revealed "no abnormalities other than the claimant's depressed and anxious mood." (R. 18). The ALJ noted Plaintiff's psychiatrist's refusal to continue prescribing Adderall after Plaintiff "attempted to tamper with a prescription and fill it early." (R. 18 (citing Ex. 6F at R. 391)). Plaintiff's visits with mental health providers occasionally became contentious when Plaintiff was not able to obtain or fill certain prescriptions. *See e.g.*, (R. 21 (citing Ex. 8F at 493)). Notations in Plaintiff's mental health records also indicated that Plaintiff engaged in some part-time work as a mechanic and deck builder. (R. 19, 20 (citing Ex. 13F at R. 628, 624)).

To his thorough consideration of the objective medical evidence, the ALJ added his consideration of medical opinions in the record. He afforded Dr. Pacek's opinion—that Plaintiff's upper extremity impairment would not warrant *any* work-related limitation—only partial weight because he found it inconsistent with the doctor's diagnosis of "near complete left radial palsy." (R. 25). The ALJ similarly declined to afford more than little weight to the State agency medical consultant's opinion that Plaintiff's left radial nerve palsy was not severe. (R. 24—25). Then, striking a balance among Plaintiff's testimony, the objective medical evidence, and the opinion evidence, the ALJ found it appropriate to limit Plaintiff's "ability to lift and carry, as well as his ability to handle, finger and feel with his left extremity," and further found it appropriate to limit him to "simple work performed for the most part on his own with minimal interaction with others." (R. 25). While Plaintiff argues this determination lacks the support of substantial evidence, he has not identified any significant information the ALJ failed to consider. He argues that the ALJ failed to fully consider the EMG nerve conduction study (Doc. No. 15, pg. 9), but the Court finds the ALJ's consideration of the EMG nerve conduction test results at (R. 23) adequate. Regarding his mental health, Plaintiff cites his consistently low GAF scores (48) to counter Defendant's argument that Plaintiff's mental health examinations were largely "benign." (Doc. No. 18, pg. 12). However, to the extent that Plaintiff's mention of the GAF scores might be construed as an argument the ALJ erred in failing to specifically address them,

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 16) is GRANTED in part and DENIED in part, as specified above.

/s Alan N. Bloch<br>United States District Judge

ecf:    Counsel of Record

---

the Court notes that such data are "not afforded any unique status in that they must expressly be discussed and analyzed in all cases." *Anderson v. Colvin*, No. CV 15-1301, 2017 WL 1163338, at *1 n.1 (W.D. Pa. Mar. 29, 2017). Additionally, and contrary to Plaintiff's assertion that the RFC lacks any limit on Plaintiff's use of his right upper extremity, the lift and carry limit the ALJ included in the RFC applies bilaterally. (R. 16). The ALJ's analysis reflects his thorough consideration of Plaintiff's testimony concerning his symptoms and reconciliation of that evidence with the objective medical evidence and the opinion evidence. The evidence the ALJ cited in support of the RFC determination and subordinate findings is such that a reasonable mind would be satisfied, *i.e.*, substantial evidence. *Richardson*, 402 U.S. at 401. Therefore, the Court will not disturb it.

        Having concluded the ALJ's RFC determination is supported by substantial evidence, the Court addresses Plaintiff's last remaining argument—his third argument—only briefly. Plaintiff argues that when the ALJ asked the VE hypothetical questions to determine whether jobs would be available to someone with Plaintiff's RFC, he failed to include all appropriate limitations. However, it is well-established that ALJs need not include every alleged limitation in the hypothetical questions posed to the VE. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 206 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)). Rather, only limitations that the ALJ finds supported by substantial evidence must be included in those hypothetical questions. *Id.* In this instance, the ALJ included all proven limitations in his questions to the VE, therefore, Plaintiff's third argument fails. The Court further notes that the ALJ asked the VE whether limiting Plaintiff's handling, fingering, and feeling to frequently for *both* hands would affect his job prospects, and the VE answered that such a modification would not eliminate any of the jobs the VE had identified. (R. 75). For these and the foregoing reasons, the Court finds the Commissioner's final decision in this matter is supported by substantial evidence. Accordingly, the Court will grant Defendant's Motion for Summary Judgment except as to costs.